Edwards et al. ads. Elliot et al.

---

NELSON EDWARDS ET AL. ADS. GEORGE W. ELLIOT ET AL.

A debt contracted in building a vessel at the ship-yard in East Newark, in this state, and which has become a lien on said vessel, according to the provision of the act entitled " An act for the collection of demands against ships, steamboats, and other vessels," (*Nix. Dig.* 576,) is not a maritime contract within the exclusive jurisdiction of the District Court of the United States—and the remedy given by said act for the enforcement of the contract or collection of the debt creates no conflict of jurisdiction between the state and federal courts.

In debt.   On demurrer to declaration.

The action was brought upon a bond given by defendants to the plaintiffs for the payment of a debt contracted in building a vessel in East Newark, in this state, which debt was a lien on said vessel, according to the provisions of the act of this state entitled " An act for the collection of demands against ships, steamboats, and other vessels." *Nix. Dig.* 576.

The defendants demurred to the declaration, on the ground that the act above referred to, by creating a lien under a state law, assumed control of maritime contracts, over which the federal courts alone have jurisdiction, and was therefore unconstitutional.

The demurrer was argued by

*A. S. Jackson,* for the demurrants.

*A. Q. Keasbey,* for the plaintiff.

The opinion of the court was delivered by

VAN SYCKEL, J.   This is a suit upon a bond given under the twelfth section of the act entitled " An act for the collection of demands against ships, steamboats, and other vessels."   *Nix. Dig.* 576.*

The declaration alleges that the debt was contracted in building a vessel at the ship-yard in East Newark, in this state, and the lien put upon the vessel while lying in the yard and before it was finished.

The defendants have demurred to the declaration, and insist that the act above referred to, by creating a lien under state law, assumes control of maritime contracts, over which the federal courts have exclusive jurisdiction, and is therefore void.

The District Court derives its powers from article three, section two, of the constitution of the United States, which provides that the "judicial power shall extend to all cases of admiralty and maritime jurisdiction;" and from the judiciary acts of 1789 and 1845.

The act of 1789, under which the District Courts exercise jurisdiction over waters navigable from the sea, among other things, declares that the District Courts shall have exclusive original jurisdiction of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common law remedy, where the common law is competent to give it.   The act of 1845 gives the District Courts jurisdiction over maritime causes arising on the lakes and the waters connecting those lakes, saving to the state courts not only the common law remedy, but any concurrent remedy which may be provided by state laws.

The extensive control of the federal courts over maritime affairs is not disputed, but the precise effect of the saving clauses in the judiciary acts of 1789 and 1845 has given rise to much discussion, and has not until recently been clearly defined.

In the case of the Moses Taylor, reported in 4 *Wallace* 411, a proceeding *in rem* was instituted in a state court

*Rev., p. 588.

against the steamship Moses Taylor, owned in New York, and engaged in navigating the Pacific ocean, for an alleged breach of contract to furnish proper food during the voyage. Judgment was given against the vessel, and upon appeal taken to the Supreme Court of the United States, Justice Field, who delivered the opinion of the court, denying jurisdiction in the state court, held that the saving clause in the act of 1789 only saves to suitors the right of a common law remedy, where the common law is competent to give it; that it is not a remedy in the common law courts which is saved, but a common law remedy, and that in all other cases the federal jurisdiction is exclusive. The same doctrine is more fully announced in *The Hine* v. *Trevor*, in 4 *Wallace* 555.

In the Moses Taylor, and also in *The Hine* v. *Trevor*, admiralty had jurisdiction by its appropriate proceeding *in rem*, and there was, therefore, manifest propriety in excluding the state courts.

But in cases where the federal courts have no power to proceed *in rem*, there being no danger of a conflict of authority under the two jurisdictions, no good reason appears why the state courts may not be permitted to enforce their statutory liens until the exclusive power to proceed *in rem* to enforce liens created by state law is extended by act of congress to the District Courts. Since the amendment of the twelfth rule of admiralty in December Term, 1858, the District Courts have refused to enforce liens *in rem*, where they rested solely on state statutes. In such cases, the only objection which can be perceived to the pursuit of the lien in state courts is, that it might give their suitors some advantage over those who proceed *in personam* in the federal courts.

The saving clause of the act of 1789 does not expressly discriminate in favor of the state courts where admiralty cannot proceed *in rem*, and that, no doubt, led the court in the cases cited, to lay down the rule in terms sufficiently broad to restrict the state courts to common law remedies in all cases of maritime contracts. It is not necessary, however,

State, Felix, pros., v. Atlantic City.

for the decision of this case, to express an opinion upon this question.

Under the interpretation of the rule given in the cases cited, if the contract set forth in the plaintiff's declaration is a maritime contract, the power of the state courts to proceed *in rem* is excluded, for that is a remedy unknown to the common law.

In the *People's Ferry Company* v. *Beers*, 20 *How.* 393, the Supreme Court of the United States has decided that a contract for building a ship is not a maritime contract. The same view was taken by Judge Grier in *Roach* v. *Chapman*, 22 *How.* 129, and it has been adopted in the more recent case of *The Belfast*, reported in 7 *Wallace* 624.

The ship, when completed, was to be used for maritime purposes, but, until then, was a building entirely under state control, and it is therefore competent for the state courts to enforce the contract, either by common law remedy, or by any new remedy which the legislature may have provided

So far, however, as the state law in question is designed to aid in the enforcement of a maritime contract for which admiralty may proceed *in rem*, it is clearly in conflict with the constitution and laws of the United States, and therefore void.

The demurrer must be overruled, and judgment entered for the plaintiffs.

Demurrer overruled.

See *S. C.*, 6 *Vr.* 265, 7 *Vr.* 449.